Council, who are going to address us this morning, if you'd approach the bench, please, or the podium, and introduce yourselves, that would be wonderful. Good morning, Your Honors. My name is Stephen H. Jesser, J-E-S-S-E-R, a sole practitioner. For the epilogue, Dr. David Chin. May I introduce Dr. Chin, who came in from San Antonio and retired last year from the United States Air Force. Thank you. Good morning, Your Honors. Melinda Colross on behalf of the defendant, Apple Lee, the American Board of Preventive Medicine. Very well. We'll start out at 15 minutes a side, and then you may reserve some time for rebuttal. Thank you, Your Honor. Every case we've had this morning, the issue about lupus has come up. Now, anything that his retirement has to do with this case still being alive? Is he still practicing? He is still seeking employment. He is restricted in the state of Texas where he resides from any direct hands-on patient care. He may still practice preventive medicine. But he is seeking his reinstatement without any restriction. He's seeking his certification that was removed. Correct. All right. Correct. All right. Thank you. Your Honors, first of all, thank you for allowing oral argument. In my experience before this Court, the Supreme Court, and many other appellate courts across the country, I'm usually not allowed oral arguments, so I don't take it for granted. And we know it's very discretionary on the Court's part. I'd like to get to the point and focus down on what I think is the one issue in the case. And it was the same issue as when Dr. called me several years ago. And that is that, and you'll forgive me if I don't take up your time with a brief review of the chronology here. I know that you've studied the briefs and the ruling of the Chancellor very carefully. But this appeal comes down to the fact that under the board's own, the appellate board's own bylaws, Dr. was to have been given an opportunity to be heard. And, yes, he was allowed to submit letters why his board certification should not have been revoked. And he did submit such letters, and he did wait months and months and months for the board to respond. But he was never accorded a hearing. Counsel, I have a question. At the time when they asked him to submit his written submissions to the board, was there ever a request, a formal or informal request by your client to have an in-person hearing? There was not, Mr. Justice, because he was unrepresented by counsel at that time. So he did not think of doing that. But there were communications between your client and the board. I believe there was a couple letters that your client submitted to the board during the time when they were considering his revocation. Correct? Yes. Okay. Yes. Here's my question. You're arguing a violation of procedural due process. Correct. How do you get over the hurdle that you have not alleged state action? The underlying action that the chancellor held we had not pled was an error. What we sought to plead was denial of, and I don't mean to be arguing circuitously here, but the denial of procedural due process under the board's own bylaws. They published inter alia and that It was a right to be heard. Yes. The board, if I might just quote this snippet, which I realize is out of context, the board shall establish procedures which grant any diplomate, i.e., a boarded practitioner whose alleged conduct or circumstances would constitute grounds for revocation, the opportunity to be heard. It's been my position, and all I can rely on is an analogous case that we cited at page 8 of Virgin, where voluntary organizations should give, We don't contest or quarrel with the board's argument that only rudimentary due process was necessary, but our position has been In Virgin, they weren't dealing with revocation of certification. Are there any cases in Illinois that indicate that when a certification is being revoked, that the party is entitled or should be provided an in-person hearing? I try to answer questions yes or no. The answer is no, but the closest I can come is in the realm of medical staff credentialing, where Atkins and other cases do require, under the Illinois Hospital Licensing Act, a hearing, whether or not the affected medical staff member elects it or not, to have a hearing. So you're equating denial or revocation of a certification with the denial or revocation of privileges in a hospital? I'm not equating that, Your Honor. I'm analogizing it to that. But the board, if you will, waived this whole argument by advising its board members that they would have an opportunity to be heard and show cause why their certification and diplomat status But what precludes them from doing that by way of how they conducted this, that is, submissions in writing? I know this is harsh, Your Honor, but we take the position that that was a sham. That was no hearing. That was paper shuffling. If the doctor had had an opportunity to come to Chicago and meet face-to-face with the committee, the hearing committee, perhaps the result could have been different. But this is the first time you're raising this issue because it wasn't raised in your briefs, that it was a sham, that it was biased or any type of improper conduct by the board. I thought I had, Your Honor, that the submission of a letter constituted no hearing as required under the bylaws. This is the first time I've used the word sham. I've not briefed that before. But weren't the actions in Texas all by agreement? Yes. Didn't he agree that his licensing in Texas should be restricted as a result of the numerous complaints regarding allegations of not rendering or the rendering of care that did not meet the standards of the medical profession? We don't quarrel with that, Your Honor. So how does anything change the lack of not having an in-person hearing? How do you get around all those or that agreement that the license should be restricted in Texas? And then the diplomat board says if your license is restricted in any way, shape, or form, we have the right to revoke. I had wanted him to have had the opportunity to face-to-face explain to the hearing committee, which never occurred, that that restriction to which he agreed, both in the military and then when he got back to Texas, had nothing to do with preventive medicine. He was rather thrust into patient care duties in Okinawa. He wasn't prepared for it. He hadn't seen patients for years. And the military personnel I've represented I have found to take their medicine. They stand up and own up to their deficiencies. And so there was an agreement worked out with Texas that his preventive medicine practice would be undisturbed, but that he could not see and treat patients hands-on. All right. Let me ask you this. It seems that you've agreed, or maybe perhaps you don't agree, that the cases suggest that when we're not dealing with state action, and when courts very rarely get involved in voluntary organizations, hurdle number one, when they do so, that the standard is rudimentary. That's what I said a few minutes ago, yes. So why is this not rudimentary? What occurred? Submission of writings and then, you know, a response from the other side. They've asked, and they raised the same point. And my response is that just submitting an explanation in writing is not being heard. I'm making a plain meaning interpretation of their bylaw, which allows a revoked board position the opportunity to be heard. I mean, look at this. We're actually having an oral argument here. But that's a decision entered by rule. But the submissions of the parties every day are presented to this court for hearing, and I mean that they are heard because of the submissions that we receive from both sides. Now, I would call this a little bit more than rudimentary. But I think that's my question. How is this not an opportunity to be heard when you are given the opportunity to file whatever it is you want in writing? Then the tribunal takes a response, and then the other side is given an opportunity to reply. How is that not rudimentary? Again, I don't wish to argue in circles, but just the mere opportunity to submit explanations is, in our opinion, for which I cannot cite a case for square does not equate to the opportunity to be heard. Well, was there ever a request made for a clarification on the term opportunity to be heard before you filed the complaint with the circuit court? Because there seems to be a misunderstanding here in terms of what does that term mean. I did not brief this, but I have a recollection of writing to the executive director of the board, and his response to me was that the board would not change its position. Paraphrasing him, the doctor had been accorded his review rights, and the matter was closed. What about their argument, and I don't want to make their argument, but I just want to raise a question, that your client, when became a member of the association, agreed to all the terms set forth in the bylaws, and one of the conditions was that the certificate actually was property of the corporation where here is the defendant association, and it could be repossessed at any time if they deemed it necessary to revoke the certification. Now, your client signed off on this when he became a part of this association. So what about that argument? There's a factual dispute in that regard, Your Honor, because it's Dr. Chin's recollection, although he cannot put his finger on a specific piece of paper, that when he was boarded, he was boarded for life, that there was no bylaw in effect at that time. It was approximately 1994, 1995, which allowed the board to revoke his board certification. So we made an argument that we should have been grandfathered, but putting that aside, perhaps I should finish up by once again going back to the Chancellor, a very good Chancellor's opinion that, not to be jocular, we made it to third base. We satisfied the first three elements for injunctive relief, but we were out at home in trying to prove a likelihood of success on the merits because of lack of an underlying cause of action, with which we disagree. As I've said before, we did plead a cause of action. We'd like the matter sent back to the Chancellor or for the court to order the board to conduct a hearing. Can I ask a question about your injunctive relief? You asked for a permanent injunction, and in order to be entitled to a permanent injunction, you have to show some type of irreparable harm that's been suffered. What is the irreparable harm that's been suffered here by your client? With which the board, according to the holding, did not disagree. The fact that he has not been able to obtain employment since his retirement. I've tried to explain to the Texas Medical Board, before which I've appeared, I'm a Texas attorney, several times that he needs to be able to have patient care as part of his license in order to even get a preventive medicine position. But what it comes down to, Justice Reyes, is that if you have any restriction on medical license anywhere in the country, you're not going to get a job at his age. And that I would contend to be the irreparable harm. The Chancery Court made a finding that, and it was based on the fact that it was not contested, the Chancery Court made a finding that there was a showing of irreparable harm. Yes. Now, in your letter, in your client's letter to the board, he did have an opportunity to discuss the fact that his abilities with regard to preventative medicine have not been challenged and that he felt that he could still make a contribution in that field. You made that argument in his letter. That's correct, Your Honor. All right. So what more would you be seeking to present along those lines in an in-person hearing? The opportunity that you're giving me right now to stand before you face-to-face and to make my argument, to make my claim, which this board, we believe, said it was going to allow by being heard but did not allow him, a face-to-face encounter. Anything else, Counsel? No, Your Honor. All right. Thank you. We'll see you in a little while. Thank you. May it please the Court, I think the justices are very familiar with the facts of this case and have honed in on the issues, but may I just briefly summarize. As you've stated, the Illinois courts will not interfere with the disciplinary actions of a private, voluntary organization such as the board in this case, except in very narrow situations. The first is where that board has violated its own bylaws or constitutional rules, and that is not the case here. Well, what about the provision of the bylaws that says, the corporation shall establish procedures which grant any diplomate whose alleged conduct or circumstances would constitute grounds for revocation an opportunity to be heard and to show why his or her certificate status should not be revoked. Such procedures, this is what I think is the language of significance, shall afford the diplomate due process. I don't know if I'm pronouncing that word right. So the board put this in, that they were going to give him due process. What does that mean? Then the board went on to define that because they established those procedures in Article IV of their Policies and Procedures Manual. In Section 4.3, Subsection C, they state, if a board-certified physician is subject to an action by a state medical board, such as the Texas board in this instance, the American Board of Preventive Medicine shall notify in writing, which it did to Dr. Chin, and invite the physician to respond in writing concerning the matter. So they gave him notice and an opportunity to be heard in writing. That satisfies due process. You pointed out this is further enunciated in the same bylaws. Well, it's the Policies and Procedures Manual. It's a Policies and Procedures Manual that is enacted in further instance with the authority of the bylaws because the bylaws state we're going to establish procedures. The bylaws don't state those procedures. The Policies and Procedures Manual does. So the Policies and Procedures Manual specifically says we'll notify you in writing and we will allow you to respond in writing. We will invite the physician to respond in writing concerning the matter. Yes. And then, of course, that is precisely what happened here. Dr. Chin was provided written notice in accordance with this section, and he responded in accordance with this section. He sent a three-page written response detailing these background facts that he's talking to you about today. What happened in Japan, what went on with the Texas Medical Board, what he agreed to, and he explained that he did not believe this situation should warrant revocation of his certification. I have a question. What of the significance that the procedures that the plaintiff received were actually outdated at the time when the proceedings were taking place? Does that have any impact on the determination whether or not to conduct an in-person hearing? They didn't. Those procedures involved the appellate appeal of the decision. They had nothing to do with whether he got an in-person hearing up front because the former Section 3C of the Procedures for Processing Complaints, which is cited in our brief, it set forth the same process that he would receive written notification and that he would have the opportunity to respond in writing. So it doesn't matter. Even if you looked at those outdated procedures, he still only got a response in writing opportunity. They did not provide for an in-person hearing. So the ones that he received, I believe they indicated there was a preliminary determination and there was going to be a final determination and then an appeal. Right. That would have been the process if those outdated procedures had still been in effect. And he actually did submit a request for an appeal, but he doesn't have any grounds. And I think this circles back to the mootness issue. He doesn't have any real grounds. The rules, the bylaws are very clear. You must at all times, we've submitted the 1994, 96, 1998, 2012 bylaws, at every stage from the inception of the certification back in 1994, 95, it always required all diplomats of the board to maintain an unrestricted medical license. He has by his own admission and with the consent procedure in Texas, he does not have an unrestricted license anymore. He's got a restricted license. So there are your bylaws. Yes. And this idea that, okay, no state action. However, courts do intervene in cases involving voluntary associations. And rudimentary, I'm going to ask you the same question, doesn't that have a kind of certain meaning? And doesn't it actually include not only notice of the charges, but an opportunity to present at a hearing to confront and cross-examine the accusers, to make a defense, and to endeavor to refute any evidence adduced? So either way, has the rudimentary basic procedures, have they been followed in this case? Is it a case where we wouldn't? They have absolutely been satisfied. The definition of rudimentary due process is that the agency, the board in this case, has acted fairly and impartially without denial of essential rights. Well, aren't those essential rights, though, more than simply send us your written submission? Aren't they notice of the charge, opportunity to be present at a hearing, confront and cross-examine the accusers, raise a defense, make a defense? Aren't they more than what you just said? In certain instances, all of those things might be required factually, if you actually had accusers and you weren't notified of the charges. But in this case, the written notification said your license, your certification is subject to revocation because you now have a restricted license and you must maintain an unrestricted license. So he was notified of precisely the basis why his certification might be revoked. We don't have any accusers here. This is not a situation where he was accused of misconduct and patients were coming in or evidence of that type would be necessary. We have a decision by the Texas Medical Board entered with consent that his license would be restricted. We have a very clear mandate in the bylaws. You must have an unrestricted license. So the questions that came up earlier, what would you do? Well, let me ask you this. What exactly did he put into writing as far as why his certification shouldn't be revoked? What did he say in the submissions? He explained that his performance in patient care was deficient, but he felt that didn't impact his ability to practice preventive medicine because that was more research-based than clinical. And so I'm actually a little bit puzzled. If he actually wants a research and not clinical job right now, it would seem to me that he could still pursue that. But now today his attorney has said something different, that if he has a restricted license he won't be able to get a job. Well, that's something for the Texas Medical Board to address, and he has grievance procedures that he can follow there, and I assume that he has. But here he was trying to explain and convince the board that a restricted license was okay for preventive medicine because he wasn't going to be involved in clinical care. But the bylaws the board has in place says flat out, no exceptions. You must have an unrestricted license or we're not going to give you our certification. You have to remember, this is an honorary designation. This kind of identifies you as a premier physician in your field, and their absolute qualification for that is you must have an unrestricted license. He doesn't have that. Is it automatic or is it discretionary on the part of the board? I mean, my reading of the bylaws that have been brought to our attention is that the certificate may be revoked if the person's license to practice medicine is limited. I believe it would be discretionary on the board's part. Right. So it's not automatic. You keep saying that there's no question. You automatically lose your status as a diplomat if you have a restricted license. But that's not necessarily the case, is it? It's a discretionary decision on the board's part. It's discretionary. It says may. May would be interpreted as discretionary on the board's part. However, their position was we will revoke for anyone. This wasn't a bias or prejudice or sham proceeding directed against Dr. Chin. Their position was if it is a restricted license, we will revoke the certification. And the whole purpose. My question is, along those lines, is if it's a discretionary matter, doesn't that kind of lead to the lend a little credence to the argument? You know, I'd like to have an opportunity to appear before the board and explain to them why they should exercise their discretion in my favor. Well, but he had that opportunity to do that in writing. And really, I think what this is directed at is situations where there might have been a problem with the underlying restriction based with the medical board. We could easily envision situations, unlike a consent proceeding here, where he agreed to have his license restricted and he acknowledged his deficiencies in patient care, we might have a situation where he had firmly opposed any restriction being imposed. So how does it determine whether or not someone is entitled to or who determines whether or not someone is entitled to an in-person hearing? The board does. It's a private voluntary organization. They had every right to provide in their bylaws and in their policies and procedures that they would entertain the matter in writing. Was that set out in the bylaws? Yes, it is. That's what, yes, that's what I read to you earlier. They said we will establish procedures providing the diplomat with an opportunity to be heard. And then in the policies and procedures manual. That's the key term here, opportunity to be heard. Yes. And as you heard counsel, their interpretation of opportunity to be heard is to be in person presenting whatever evidence or testimony that they want before the board. You're indicating that that is not the case. Because the board defined what an opportunity to be heard was in its policies and procedures by saying we will provide you written notice, we will entertain written notice. And, again, as you pointed out earlier, he didn't request an in-person hearing. He didn't object to the process. He set forth his case in his written response. He thanked the board at the end of that response for having the opportunity to explain his situation to them. And he only raised this issue when the board ruled against him. So to determine whether or not someone is entitled to be heard in person, is it based on a subjective or objective factor in terms of I didn't receive the proper treatment or I didn't get the proper care, which could be a subjective testimony or an opinion, as opposed to an objective basis where he had his privileges restricted in Texas? Well, there may be situations where a written submission would be found to not satisfy the rudimentary due process, that lower standard because we don't have a state actor. I think we can envision situations where a good argument could be made there. This is not one of those cases where you have a very straightforward by-consent agreement to have your license restricted because your patient care is deficient. He acknowledged that in his written submission to the board. He gave some background why he felt this shouldn't prevent him from holding his certification, and the board ruled against him. There's no further evidence that need to be entertained in an in-person hearing because those essential facts, which form the crux of the decision, were established in the written procedure. And I submit it's no different than if you had decided this case on the briefs rather than entertaining oral argument. There's certainly, you would be fully apprised of the situation. And this is a court. It's different. You are state actors. We've got a private voluntary association here. The courts are very reluctant to step in and interfere with the procedures and policies properly implemented by the board in this case, especially here where there was no allegation of bias below. There was no allegation that this was a sham proceeding. It was very fair, straightforward, and upright. Again, that satisfies that lower threshold. Thank you, Your Honor. One other question. What about counsel's argument with regards to the Virgin case where he's indicating that the suspension or revocation of privileges is analogous to the revocation of a certificate in this case? Well, first of all, it's not. This is an honorary designation. He is fully capable of practicing medicine elsewhere, other than for the fact that he's got a restricted medical license in Texas. That's really the crux of his problem. It's not the certification. And secondly, in Virgin, the hospital's own bylaws did provide for written notice of the charges against and an in-person hearing, and I believe both of those procedures were not followed in that case. There was no written notice, and they didn't give him, the physician, the opportunity for the in-person hearing. So there was a clear violation of their own bylaws. Here we don't have that violation because we gave him written notice. We gave him the written response, which he pursued. Thank you, Your Honors. Thank you, counsel. Thank you. Before I make two final points, does the Court have any questions of me at the moment? If not, as far as ‑‑ and this is a collateral point, but as far as thanking the Board for allowing him to write to him, that's like me, over thousands of e-mails I've sent in the last ten years, 98% of them I end them by saying thank you. It's just ‑‑ Well, that's good, counsel, because we've seen some e-mails that don't say that. It's good to hear that you do that. He's a polite man, and that's just the way he is. And I did not really adequately complete my response to Justice Reyes's question about the irreparable injury, inadequate remedy at law. He ‑‑ not that we've pled this, not that we've argued this, without a Board certification, he has not been able to procure a position in preventative medicine. Is it without the Board certification, or is it because of the restrictions? Both, Your Honor. Isn't it primarily the restrictions? I mean, do you think that the ‑‑ let's say he never even had that certification. Do you think with the restriction on his license he was going to be able to just walk in the door and be employed? I mean, doesn't that really put a horrible gloss over? That has been a burden, an impediment to his obtaining post‑retirement employment. But he has held out hope that he can still procure preventative medicine, preventive medicine position, but the state of the world is such that he needs Board certification to do so. Well, thank you, Justices. Counsel, thank you both very much for your presentations today and your excellent briefing. We will take the matter under advisement. Thank you very much. Court is adjourned.